**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

|  |  |  |
|---|---|---|
| DONALD MCCOLLUM, JR., | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. 0:06-1934-JFA-BM |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TENET HEALTHCARE | ) | |
| CORPORATION; AMISUB OF | ) | **Report and** |
| SOUTH CAROLINA, INC., | ) | **Recommendation** |
| d/b/a Piedmont Healthcare System | ) | |
| d/b/a Piedmont Medical Center, | ) | |
| LISA HORNEY, individuals and as | ) | |
| agent servant or employee of Tenet | ) | |
| Healthcare Corporation, Amisub of | ) | |
| South Carolina Inc. d/b/a Piedmont | ) | |
| Medical Center and d/b/a Piedmont | ) | |
| Healthcare Systems, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff originally filed this action asserting claims for sexual harassment and

retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.. , in the

South Carolina Court of Common Pleas. Plaintiff, a former employee of the Defendants, also asserts

state law claims for assault and battery, defamation, negligent hiring and supervision, and intentional

infliction of emotional distress.

This action was removed from state court to the United States District Court for the

District of South Carolina by the Defendants on June 30, 2006, and on July 7, 2006, the Defendants

filed a motion to compel arbitration and dismiss and/or stay Plaintiff's claims pursuant to Rule

12(b)(1), Fed.R.Civ.P.  Plaintiff filed a memorandum in opposition on August 15, 2006, and the



Defendants filed a reply memorandum on August 25, 2006.  Defendants' motion is now before the

Court for disposition.[1]

### Discussion

When considering a motion to dismiss pursuant to Rule 12(b), the Court is required

to "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor

of the Plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts

that could be proved." Southmark Prime Plus L.P. v. Falzone, 776 F.Supp. 888, 890 (D.Del. 1991);

(quoting Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3rd Cir. 1991)). Here,

Defendants  contend that an Employee Acknowledgment Form, signed by the Plaintiff (a registered

nurse employed at the Piedmont Medical Center (PMC)) on May 8, 2001, contains a clear provision

requiring the parties to submit any employment dispute or issue to binding arbitration as conducted

pursuant to the American Arbitration Association's Rules and Procedures, and that they are therefore

entitled to an order compelling arbitration and dismissing Plaintiff's Complaint. Alternatively,

Defendants seek a stay of this case pending arbitration.

The Federal Arbitration Act ("FAA") provides that  "[a] written provision in . . . a

contract evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §

2.  The Fourth Circuit has held,

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendants have filed a motion to dismiss.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



> [t]he FAA reflects "a liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. <u>Hightower v. GMRI, Inc.</u>, 272 F.3d 239, 241 (4th Cir. 2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." <u>Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.</u>, 489 U.S. 468, 475-476 (1989).

<u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 500 (4th Cir. 2002).

A litigant can compel arbitration under the FAA if the litigant can demonstrate: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir. 1991).

Plaintiff does not contest the first and fourth elements of this four part test; <u>see</u> <u>Memorandum in Opposition</u>, p. 2; but does argue that the second and third elements are not met in this case. With regard to the second element, Plaintiff contends that the contract at issue is invalid, because neither agreement[2] specifically states that the agreement to arbitrate was in consideration of Plaintiff's employment. Rather, Plaintiff asserts that the only consideration in the agreement is the Defendant's responsibility to pay the majority of the arbitration cost, which is unconscionable since that would bias the arbitrator. The undersigned disagrees.

---

[2]Plaintiff actually signed two (2) separate documents. On November 17, 2000, shortly after he began working at PMC, Plaintiff signed an Employee Acknowledgment Form which provided, in part, that the signor agreed to "submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet." <u>Defendants' Exhibit 1</u>. On May 8, 2001, Plaintiff signed a second Employee Acknowledgment Form which again provided that all claims arising out of Plaintiff's employment were subject to arbitration. <u>Defendants' Exhibit 2</u>.

3



With respect to the issue of consideration, there is no dispute that the Plaintiff continued working for the Defendant Tenet after signing both agreements. Continued employment can constitute sufficient consideration to render an agreement to arbitrate binding. See e.g., Towles v. United Healthcare Corp., 524 S.E.2d 839, 845 n. 4 (S.C.Ct.App. 1999)[where acknowledgment which did not specifically state that the agreement was in exchange for continued employment, plaintiff's continued employment was sufficient consideration for the agreement.] Further, the Agreement contains a provision that the employer is required to submit to arbitration as well. The Defendants' agreement to submit to mandatory arbitration is also adequate consideration. Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir. 1998)[No consideration is required above and beyond the agreement to be bound by the arbitration process for any claims brought by the employee.]; Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002)[Temporary employment agency's promise to arbitrate its own claims was *"a fortiori* adequate consideration for [the] agreement."]; Kellogg, Brown & Root, Inc. v. Bragg, 250 F.Supp.2d 664, 668 (S.D.W.Va. 2003). Therefore, adequate consideration is contained in the agreement.

With regard to the fee provision, while courts have questioned agreements where the *employees* were required to pay a substantial sum of the arbitration cost; Giordano v. Pep Boys–Manny, Moe & Jack, Inc., No. 99-1281, 2001 WL 484360 (E.D.Pa. Mar. 29, 2001); In re Knepp, 229 B.R. 821, 837-838 (Bankr. N.D. Ala. 1999); the agreement of the *employer* to pay the substantial cost of arbitration is designed to protect the employees from having to bear the expense of the arbitration. Such agreements have been regularly and specifically upheld by courts. See, e.g. Kovelski v. SBC Capital Markets, Inc., 167 F.3d 361, 366 (7th Cir. 1999); Cole v. Burns Int'l Security Servs, 105 F.3d 1465, 1482-1485 (D.C.Cir. 1997). Furthermore, the Agreement here

4



specifically provides that the arbitrator is to be chosen by mutual agreement of Plaintiff and the

Defendants, and that the arbitration is to be conducted under the procedural rules of the American

Arbitration Association.  The undersigned does not find that the requirement that the Defendants are

to  pay the majority of the arbitration costs is unconscionable under these facts and the applicable

caselaw.  Accordingly, the parties have a valid, binding agreement to arbitrate.

With regard to the third element, Plaintiff asserts that there has been no showing that

the Agreement touches or concerns interstate or foreign commerce.   The undersigned again

disagrees. To determine whether a transaction involves commerce within the meaning of the FAA,

"the court must examine the agreement, the complaint, and the facts . . . ." Soil Remediation Co.

v. Nu-Way Environmental, Inc., 476 S.E.2d 149, 152 (S.C. 1996).  Charles F. Miller, President/CEO

of Defendant Piedmont Healthcare System, has submitted an affidavit wherein he attests that

Piedmont is owned and operated by the Defendant Tenet, which is headquartered in Dallas, Texas,

and that Tenet owns and operates more than 100 hospitals in more than a dozen states in the United

States.  While the Plaintiff was employed by Defendant Piedmont, Miller attests that Plaintiff's

paychecks were prepared in Dallas and shipped to South Carolina.  Miller also attests that the

handbook given to the Plaintiff for which he signed the agreement to arbitrate was prepared by Tenet

in Dallas and sent to South Carolina.  In fact, the Agreement itself indicates that it is between the

Plaintiff and Tenet, not Piedmont.  Miller additionally attests that Piedmont provides treatment to

patients from South Carolina and North Carolina, as well as from other states as necessary, and that

Piedmont regularly purchases equipment and supplies from manufacturers and suppliers in other

states, which are then shipped across state lines and were used by the Plaintiff in his role as a

registered nurse.  Further, the costs and expense of the healthcare provided to patients, including

5



care performed by the Plaintiff, is regularly paid or reimbursed by out-of-state and multi-state insurance carriers and healthcare plans, including federal funds from Medicaid and Medicare. Finally, Miller attests that Piedmont regularly uses interstate mail and telephone service to conduct business.  See Miller Affidavit.

For his part, Plaintiff refers the Court to the analysis performed by the South Carolina Supreme Court in Timms v. Mary Greene, 427 S.E.2d 642 (S.C. 1993).  In Timms, the Defendant attempted to show interstate commerce based on the following factors:  (1) it was a subsidiary of an out-of-state company, (2) it marketed its services out of state; (3) it hired out-of-state employees; (4) it purchased a majority of its goods and supplies from out of state; and (5) it took payment in the form of Medicaid and Medicare.  Although the Court in Timms found that these factors could evidence the Defendant's involvement in interstate commerce, it went on to hold that the relationship between the parties in that case (patient and nursing home) was insufficient to form the basis of the contract for a state tort personal injury action.  However, Timms is distinguishable from the facts in this case.  The Plaintiff in this case was paid by an out-of-state entity; he specifically contracted with the out-of-state Defendant Tenet to arbitrate; and his employment involved treatment of out-of-state patients and the use of out-of-state products.  After careful review and consideration of the evidence, arguments, and applicable caselaw, the undersigned finds and concludes that the transaction in question here involved interstate commerce.  Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265 (1995)[FAA section making enforceable a written arbitration provision in a contract evidencing a transaction involving commerce is written broadly, extending the Act's reach to the limits of Congress' commerce clause power]; Rini v. Snap-On Tools Corp., No. 92-251, 1992 WL 151803, at *3-4 (N.D.N.Y. June 22, 1992).

6



## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion to compel arbitration and dismiss Plaintiff's claims pursuant to Rule 12(b)(1), Fed.R.Civ.P., be **granted**. See Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79 (2000); Jackson v. Cintas, 425 F.3d 1313, 1316 (11th Cir. 2005); Interactive Flight Technologies, Inc. v. Swissair Swiss Air Transport Co., 249 F.3d 1177, 1179 (9th Cir. 2001).

Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

October 10, 2006

